UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X
MAMADY CISSE, Sr. as Administrator of the Estate of
MAMADY CISSE (Deceased),

                          Plaintiff,

                  -v-

THE CITY OF NEW YORK, NYPD POLICE OFFICER
IVAN NUNEZ, Shield No. 25299, NYPD POLICE
OFFICER ALAN VIVEROS, Shield No. 7434, and NYPD
POLICE OFFICERS JOHN AND JANE DOES NUMBERS
ONE THROUGH FIVE,

                          Defendants.
------------------------------------------------------------------------- X

Case No.  24-cv-8287

**<u>COMPLAINT</u>**

JURY TRIAL DEMANDED

       Plaintiff, MAMADY CISSE, Sr. (hereinafter "Plaintiff") as Administrator of the Estate of

MAMADY CISSE (hereinafter "MAMADY", "MAMADY CISSE", and/or the "deceased"),[1] by

his attorneys, SHULMAN & HILL, PLLC, as and for his Complaint, allege as follows:

**PRELIMINARY STATEMENT**

       1.    This is a civil rights, wrongful death, and survival action arising from

defendants' wrongful shooting, excessive use of force, and other wrongful acts resulting in the

death of Mamady Cisse on or about September 9, 2023, in the County of Bronx, State of New

York.

       2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the First,

Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and

Constitution of the State of New York.

---

[1] Plaintiff is the father of the deceased, his namesake. For clarity herein, Plaintiff will be referred to solely as such, while any other reference to the deceased will be as Mamady Cisse without suffix styling.

**JURISDICTION**

3.      Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and as this action seeks redress for the violation of Plaintiff's constitutional and civil rights, is brought under 42 U.S.C. § 1983.

4.      Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide causes of action arising under state law that are so related to the federal claims that they form part of the same case or controversy.

**VENUE**

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as the transactions and occurrences forming the basis for this action occurred within the district.

**PARTIES**

6.      Mamady Cisse was a 22-year-old lifelong resident of the Bronx, who, as of his untimely death on September 9, 2023, resided at 1590 East 172nd Street, Bronx, New York 10472. He was a citizen of the United States, the State of New York, and resided in Bronx County.

7.      Plaintiff, Mamady Cisse, Sr. is the father of the deceased, and was appointed by the Surrogate's Court of Bronx County as the Administrator of his son's estate. He resides in Bronx County.

8.      The City of New York ("City") is a municipal corporation, created and authorized under the laws of the State of New York. Pursuant to Section 431 of its Charter, the City of New York has established and maintains the New York City Police Department (hereinafter

the "NYPD") as a constituent department or agency. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

9.      Defendant, NYPD Police Officer Ivan Nunez, Shield No. 25299 (referred to herein as "Nunez" or "Officer Nunez"), was, at all times relevant herein, an employee of the City and a member of the NYPD. He is, upon information and belief, the officer who fired the fatal shot killing Mamady Cisse.

10.     Defendant, Officer Nunez, is being sued in his individual and official capacities.

11.     Defendant, NYPD Police Officer Alan Viveros, Shield No. 7434 (referred to herein as "Viveros" or "Officer Viveros"), was, at all times relevant herein, an employee of the City and a member of the NYPD. He is, upon information and belief one of the two officers who descended upon Mamady Cisse and contributed to his death.

12.     Defendant, Officer Viveros, is being sued in his individual and official capacities.

13.     At all times relevant herein, defendants Nunez and Viveros acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

14.     At all times relevant herein, defendants Nunez and Viveros violated clearly established rights and standards under the United States Constitution, of which reasonable police officers in their respective circumstances would have known.

15.     NYPD Police Officers John and Jane Does Numbers One Through Five, were, at all times relevant herein, employees of the City of New York and members of the NYPD,

whose names are presently unknown to Plaintiff. The true names of these officers will be added, upon motion, when their identities are revealed through discovery.

16.     NYPD Police Officers John and Jane Does Numbers One Through Five are being sued in their individual and official capacities.

17.     At all times relevant herein, defendants NYPD Police Officers John and Jane Does Numbers One Through Five acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

18.     At all times relevant herein, defendants NYPD Police Officers John and Jane Does Numbers One Through Five violated clearly established rights and standards under the United States Constitution, of which reasonable police officers in their respective circumstances would have known.

## JURY DEMAND

19.     Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

### A.    Mamady Cisse's Death

20.     On September 9, 2023, at approximately 2:10 p.m., the defendant officers were dispatched to the 7-Eleven convenience store (herein referred to as the "7-Eleven" or "store") located at 3508 East Tremont Avenue, County of Bronx, City and State of New York.

21.     The 7-Eleven is located within the confines of the NYPD's 45th Precinct.

22.     The 45th Precinct stationhouse is located steps away from the 7-Eleven.[2]

23.     Defendants Nunez and Viveros walked the short distance from the Precinct, around the corner to the 7-Eleven, and entered through the front doors.

24.     Mamady Cisse was present within the 7-Eleven when the defendant officers entered.

25.     Upon the officers' entry, Mamady was located at the rear of the store, behind an island containing hot beverage condiments.

26.     Officer Nunez approached Mamady from the left side of the island, Officer Viveros approached him from the right.

27.     Officer Nunez asked Mamady two times "where are you going?"

28.     The inquiry did not prompt any response from Mamady.

29.     Nunez had his service weapon drawn and pointed directly at Mamady, while walking backwards toward the front of the store.

30.     Aside from interjecting "don't act f***ing stupid, bro", Officer Viveros observed silently before also approaching Mamady from the rear with his service weapon drawn.

31.     Mamady, appearing obviously confused and/or disoriented, did not respond to Nunez's words or otherwise indicate understanding.

32.     It was clear that he was experiencing a mental health crisis or was otherwise impaired preventing him from possessing situational awareness in this moment.

33.     As Nunez advanced backwards toward the entrance to the store, Viveros followed behind Mamady.

---

[2] The 7-Eleven is located approximately 350 feet to the Precinct's north, at the northwest corner of Barkley Avenue at East Tremont Avenue.

34.    At no point did Mamady utter threatening words or indicate intent to harm officers or civilians.

35.    In fact, Mamady never uttered any words at all during this encounter.

36.    At no point did either officer ask whether Mamady was alright, or in need of assistance.

37.    At no point did either officer draw their taser or their pepper spray.

38.    At no point did either officer express to Mamady that he would be shot.

39.    At no point did either officer employ any non-lethal de-escalation techniques.

40.    At no point did officers call for additional units.

41.    Officer Nunez fired a shot, striking Mamady, and causing him to immediately fall to the ground.

42.    Only 34 seconds elapsed from the moment the individual officers entered the 7-Eleven, to the moment Officer Nunez fired his shot, killing the deceased.

43.    Mamady was rushed to Jacobi Hospital, where he was pronounced dead at 3:14 p.m. from the gunshot wound he had sustained.

44.    At no time relevant herein did the defendant officers have an objective basis or probable cause to believe that the deceased had committed a crime.

45.    At no time relevant herein did the defendant officers acquire the legal justification to use deadly force against Mamady.

46.    Nevertheless, he was unlawfully descended upon and fatally shot by defendant officers, mere seconds after they encountered him.

47.     Plaintiff has suffered the loss of companionship, support, love, society, and services of his son, Mamady Cisse, as well as lost wages, funerary expenses, and mental and emotional anguish.

48.     The unlawful seizure, use of deadly force, assault, battery, and negligence by the individually named defendants caused Plaintiff to sustain physical, psychological, and emotional trauma, as well as causing the deceased conscious pain and suffering, and wrongful death.

**B.    The NYPD's Troubled History with Encounters with Emotionally Disturbed Persons**

49.     Mamady's death is only one of many wrongful death incidents in the City where police have improperly, inappropriately, and ill-advisedly responded to situations involving persons that could reasonable be perceived to be emotionally disturbed persons ("EDPs").

50.     The NYPD is, of course, the typical first responder for incidents involving presumed EDPs.

51.     Such calls exceed 200,000 annually.

52.     The calls too often result in unwarranted arrest, or worse, emotional and physical abuse, and even death.

53.     Over the years, with improved reporting and the advent of the internet and social media, these encounters have become more public, more troubling, and have sparked more outrage.

54.     Among the landmark incidents in this area was the 1984 death of Eleanor Bumpurs. After a struggle with police, Bumpurs was shot by an NYPD officer with a 12-gauge shotgun and killed. Thereafter, the NYPD began to implement EDP policies, but those policies failed to include the involvement of mental health professionals.

55.     In 1999, Gidone Busch was killed by four NYPD officers who collectively shot him after receiving complaints that he had brandished a hammer.

56.     In 2012, an EDP call describing a man with a knife led officers to Mohamed Bah. Officers attempted to use non-lethal force, so they claim, which failed, and officers shot him five times killing him.

57.     The 2013 death of Glenn Broadnax resulted after officers responded to him erratically running in the streets near Times Square. When officers attempted to stop him, they claim he reached into his pants. The officers shot him multiple times and injured bystanders.

58.     In March of 2024, Win Rozario called 911 himself to report his mental health crisis in a cry for help. Armed with only a pair of scissors, officers shot him after attempting to subdue him with taser deployments.

59.     Mark Francis Kelly was shot and killed by police on August 25, 2024, after officers responded to a call for a man with a gun. Absent any allegation that Kelly had attempted to use the gun, let alone use the gun against officers, he was shot and killed by responding officers.

60.     40 years since the Bumpurs incident, NYPD policies are still lacking and have resulted in countless deaths.

61.     Upon information and belief, lacking from NYPD policy is any requirement that mental health professionals be deployed to incidents involving EDPs. Nor are there provisions for adequate mental health training involving de-escalation techniques.

62.     The City has refused to adopt best practice policies used by other municipalities across the nation, cities which have adopted models focused on training officers for mental health crises. Such cities have experiences less violence and loss of life in police encounters with EDPs.

63. The failure to adopt policies and practices to this end has resulted in continued violence in death in police encounters.

64. Worse still, the de facto ratification of acts of violence against presumed EDPs by the NYPD has formed a practice resulting in the continued loss of life.

65. As a result of the foregoing, Mamady Cisse was killed.

66. Because the City had no appropriate policy in place for handling situations such as his and had failed to adequately train or supervise the defendant officers, Mamady Cisse was caused to suffer and die.

**COMPLIANCE WITH NEW YORK'S GENERAL MUNICIPAL LAW**

67. On September 21, 2023, Plaintiff timely served a Notice of Claim upon the City, within 90 days of the events giving rise to the claims therein as required by the General Municipal Law.

68. On May 24, 2024, Plaintiff appeared for an examination pursuant to Section 50-h of the New York General Municipal Law.

69. More than 30 days have elapsed since Plaintiff served his Notice of Claim and the City has declined or failed to provide adjustment or payment thereof.

**COUNT I**
**Pursuant to 42 U.S.C. § 1983 for Violations of Plaintiff's**
**First, Fourth, and Fourteenth Amendment Rights**
***(Against All Defendants)***

70. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

71. By the acts and omissions described herein, defendants violated 42 U.S.C. § 1983, depriving the deceased of the following clearly established and well-settled constitutional

rights as protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution:

        a.    The right to be free from unreasonable searches and seizures as secured by the Fourth Amendment;

        b.    The right to be free from excessive and unreasonable force in the court of arrest or detention, including the use of unlawful deadly force, as secured by the Fourth Amendment;

        c.    The right to be free from the use of force, including deadly force, that shocks the conscience and that is used without a legitimate law enforcement purpose as secured by the Fourteenth Amendment; and

        d.    The right to be free from government interference with familial relationships, and Plaintiff and the deceased's rights to companionship, society, and support of one another, as secured by the First and Fourteenth Amendments.

72.    Defendants subjected Plaintiff and the deceased to their wrongful conduct, depriving Plaintiff and the deceased of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff (individually and on behalf of the deceased) and others would be violated by their acts and/or omissions.

73.    As a direct and proximate result of defendants' acts and omissions as set forth herein, Plaintiff and the deceased sustained injuries and damages.

74.    The defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983.

75.    Plaintiff is similarly entitled to reasonable attorney's fees under 42 U.S.C. § 1988 and applicable federal law.

## COUNT II
### Excessive Force
### (*Against Defendant Nunez*)

76.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

77.     The discharge of Officer Nunez's firearm, without justification or reasonable provocation, constitutes an excessive use of force in violation of 42 U.S.C. § 1983 and the United States Constitution.

78.     The conduct of the defendant directly and proximately caused the deceased's untimely death and for Plaintiff, who brings this action as the Administrator of the deceased's estate, to suffer loss of companionship, society, love, affection, and to suffer pecuniary loss.

79.     Had Mamady Cisse survived this attack, he would have been entitled to maintain an action under the law.

## COUNT III
### Assault and Battery
### (*Against Defendant Nunez*)

80.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

81.     Nunez's direct actions of shooting and killing Mamady Cisse were intentional, malicious, and were committed with wanton disregard for the rights and life of the deceased.

82.     Nunez intended to cause harmful, offensive, and deadly contact with Mamady Cisse's person, and in fact did cause such harmful, offensive, and deadly contact with him.

83.    The actions aforesaid constituted unlawful assaults and batteries upon Mamady Cisse.

84.    As a result of said conduct by Nunez, the deceased sustained serious and severe injuries, both physical and emotional, which led to his untimely death.

85.    At all times relevant herein, Nunez was an employee of the City and acted within the scope of his employment.

86.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of Officer Nunez, as set forth herein.

### COUNT IV
**Wrongful Death**
***(Against All Defendants)***

87.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

88.    The acts of defendants, alleged herein, individually and collectively wrongfully and inarguably caused Mamady Cisse's death.

89.    By reason of the foregoing, Plaintiff, as the father of the deceased, next of kin, and the statutory distribute of the deceased's estate, sustained pecuniary and non-economic loss resulting from the loss of love, comfort, society, attention, services, and support of his son. Defendants are liable for the wrongful death of Mamady Cisse.

90.    As a result of the defendant officers' actions, the deceased suffered severe and fatal injuries to his body, was caused to suffer severe pain and mental anguish, which said injuries resulted in death, with resulting expenses of obligations for funeral and burial all to the damage of Plaintiff herein.

91.     At all times relevant herein, defendants Nunez and Viveros were employees of the City and were acting within the scope of their employment.

92.     The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendants Nunez and Viveros, as set forth herein.

### COUNT V
### Conscious Pain and Suffering
### (*Against All Defendants*)

93.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

94.     Defendants, without cause, legal justification, or provocation used force and/or deadly force against the deceased. The use of such force was not justified or warranted under the circumstances and constituted unreasonable, unnecessary, and excessive force.

95.     The use of such force did not immediately cause Mamady's death. As a result, the deceased endured traumatic, prolonged suffering and experienced fear of impending death, severe emotional distress, and conscious pain and suffering.

96.     At all times relevant herein, defendants Nunez and Viveros were employees of the City and were acting within the scope of their employment.

97.     The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendants Nunez and Viveros, as set forth herein.

### COUNT VI
### Failure to Intervene
### (*Against Defendant Viveros*)

98.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

99.     While Officer Viveros may not have fired the fatal shot, he was present when Officer Nunez violated Mamady's constitutional rights had an affirmative duty to intervene on behalf of the deceased, whose constitutional rights were being violated in Viveros' presence by Nunez.

100.    Viveros was present, aware, and directly observed Nunez' escalation, weapon drawing, preparation, and ultimate firing directly at Mamady's person without provocation or legal justification.

101.    Viveros failed to intervene to prevent the unlawful conduct described herein.

102.    Plaintiff, as the Administrator of the deceased's estate, brings this action to recover damages resulting from the injuries sustained.

103.    The actions of the defendant officers directly and proximately caused Mamady to sustain injuries and suffer damages of a personal and pecuniary nature, including conscious pain and suffering prior to his death, for which, had he survived, he would have been entitled to maintain an action.

104.    Such action has survived him and accrued to the benefit of Plaintiff, as his father and the Administrator of the deceased's estate.

### COUNT VII
### Negligence
### *(Against All Defendants)*

105.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

106.    The individual officers, acting within the scope of their employment, negligently discharged their duties by failing to exercise a reasonable degree of care, and thereby

failed to properly communicate with Mamady. They failed to diffuse a non-lethal situation and created a dangerous encounter that resulted in the injuries and death of the deceased, and the deprivations described herein.

107.    The acts of negligence by the individual officers included, but are not limited to, failing to identify that Mamady was experiencing a mental health crisis causing his lack of situational awareness; failing to diffuse the situation using de-escalation strategies; and failing, if necessary from the perspective of the officers, to subdue Mamady through the litany of non-lethal options available to them.

108.    The City is responsible for the negligence of its officers committed within the scope of their employment.

109.    The City was negligent in failing to properly train or supervise its officers in how to properly respond to service calls involving individuals who are clearly experiencing mental distress or other mental health crisis.

110.    The City was negligent in failing to properly train or supervise its officers in the use of physical or deadly force, and the continuum of force.

111.    By the actions described herein, each and every defendant, jointly and severally, has committed the described wrongful acts against the deceased, with are actionable under the law.

112.    Plaintiff, as the Administrator of the deceased's estate, brings this action to recover damages resulting from injuries to the deceased.

113.    The actions of the defendant officers directly and proximately caused Mamady to sustain injuries and suffer damages of a personal and pecuniary nature, including

conscious pain and suffering prior to his death, for which, had he survived, he would have been entitled to maintain an action.

114.    Such action has survived him and accrued to the benefit of Plaintiff, as his father and the Administrator of the deceased's estate.

### COUNT VIII
### Negligent Training, Retention, Discipline, and Supervision
### (*Against Defendant City*)

115.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if set forth fully herein.

116.    The defendants owed a duty of care to Mamady Cisse to serve and protect him from the harm alleged herein, because under similar circumstances, a reasonable, prudent, and careful person would have anticipated unnecessary injury to Mamady in a like situation.

117.    The City, as discussed herein, failed to adequately train its employees, created a foreseeable risk of injury to civilians, which the City had an obligation to prevent through the assumption of the risks incidental to maintaining a police department.

118.    The City further negligently retained unfit officers, supervisors, and commanding officers, who contributed to the patterns, policies, and practices that allowed for Mamady Cisse's untimely death.

119.    Not only was the City duty-bound, but it also had the right and power to control the actions of the individual officers.

120.    The dangerous propensities of NYPD police officers, including those of the 45th Precinct, created a risk that the City should have known would harm the public.

121.    The City was negligent in its supervision of the individual defendant officers, and the NYPD more broadly, as evidenced by the history of constitutional violations against civilians, including those involving excessive and even deadly force.

122.    The City's negligence led to Mamady's death in a manner utterly intolerable in a civilized society, that shocks the conscience to an astounding degree. Accordingly, defendants are also liable for punitive damages.

## COUNT IX
### *Monell Liability*
### *(Against Defendant City)*

123.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

124.    Chapter 18 of the New York City Charter provides that a Police Commissioner is appointed by the Mayor, who serves at the pleasure of the Mayor.

125.    The Commissioner is the chief officer of the police force and is charged with its governance, discipline, and administration.

126.    The Mayor, the City Counsel, and the Commissioner had final policymaking authority regarding establishment of written policies and training programs governing the conduct of NYPD officers performing duties on behalf of the City.

127.    The Mayor, the City Counsel, and the Police Commissioner established and/or ratified the NYPD's written policies and training governing the conduct of NYPD officers performing duties on behalf of the City.

128.    The written policies and training established and/or approved by the Mayor, the City Counsel, and the Police Commissioner constitute the official policy of the City and were the moving force behind and causing the deceased's death and Plaintiff's injuries.

129.    The City, acting by and through its mayor and/or other policymakers, had knowledge of the NYPD's unconstitutional patterns and practices, and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

130.    The City, acting by and through its mayor and/or other policymakers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from the NYPD's unconstitutional patterns and practices and was deliberately indifferent to, and/or tacitly authorized same.

131.    On and prior to September 9, 2023, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of subjects of the NYPD.

132.    On and prior to September 9, 2023, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene upon the use of excessive force by NYPD officers.

133.    On and prior to September 9, 2023, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to treat individuals of color differently, including, but not limited to implementing deadly force at a higher rate against non-white men, who posed little-to-no threat to officers.

134.    On and prior to September 9, 2023, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or

ratified a number of customs, patterns, or practices, that shall be further identified through discovery. Such customs, patterns, and/or practices led to the death of Mamady Cisse.

135.    The City, with deliberate indifference to the rights of citizens, continues to employ Nunez and Viveros, despite knowledge of their propensity for unconstitutional, unlawful, dangerous, improper, and even deadly conduct.

136.    The City had the power and opportunity to properly train Nunez and Viveros, but failed to do so despite the City's knowledge of a pattern of complaints regarding excessive use of force stemming from officers from the 45th Precinct.

137.    The City's failure to adequately train or discipline officers, including Nunez and Viveros, is a small part of its larger custom, policy, or practice of failing to supervise, terminate, or discipline its officers for their unconstitutional, unlawful, or otherwise improper conduct, and thereby encouraged Nunez and Viveros to engage in unlawful and harmful acts toward subjects, including Mamady Cisse.

138.    This participation by the City caused and allowed for officers to act with impunity and without fear of retribution.

139.    The unconstitutional policies, practices, and customs defined herein – which may only be further supported through extensive discovery – were the moving force behind Mamady Cisse's death.

140.    Mamady died as a direct and proximate result of the acts and omissions of the City, specifically the ratified practices and policies permitting excessive, even deadly force against suspected EDPs, and the lack of adequate training in dealing with such populations.

141.    As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

142.    Plaintiff is entitled to recovery of costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

143.    As a direct and proximate result of the wrongful acts and omissions described herein, Plaintiff, and the deceased's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of aid, counsel, guidance, assistance, love, protection, and support, in an amount to be determined by a jury.

### COUNT X
**Defendant Officer's Violations of Plaintiff's
AC 8-802 Rights
(*Against Defendant Nunez*)**

144.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

145.    The acts of Officer Nunez constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

146.    Officer Nunez's acts caused the deceased to be deprived of his rights under 2021 New York City Local Law No. 48, New York City Administrative Law §§ 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the excessive use of force, regardless of whether such fore is used in connection with a search or seizure.

147.    Officer Nunez, while in uniform, unlawfully seized Mamady Cisse by intentionally and wantonly shooting him, causing his death.

148.    By reason of the acts and omissions described herein, Plaintiff has sustained damages and was otherwise injured.

## COUNT XI
### Defendant Officer's Failure to Intervene in Violation of Plaintiff's AC 8-802 Rights
### (*Against Defendant Viveros*)

149.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

150.    The acts of Officer Viveros constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

151.    Officer Viveros had a duty to protect the deceased from violations of his rights under New York City Local Law No. 48, New York City Administrative Code §§ 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the excessive use of force, regardless of whether such force is used in connection with a search or seizure.

152.    Officer Viveros, while perhaps not responsible for the fatal shot to Mamady Cisse, was present when Officer Nunez prepared to and fired such shot, had an affirmative duty to intervene on his behalf, whose constitutional rights were being violated in Viveros' presence.

153.    Officer Viveros failed to intervene to prevent the unlawful conduct described herein, thereby failing in his duty to intervene to protect Mamady Cisse from violation of his rights and the ultimate loss of his life.

154.    By reason of the acts and omissions described herein, Plaintiff has sustained damages and was otherwise injured.

**COUNT XII**
**The City's Liability for Defendant Officers' Violations of Plaintiff's**
**AC 8-802 Rights**
(*Against Defendant City*)

155.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

156.    The individual defendant officers are "covered individuals," as defined by 2021 New York City Local Law No. 48, New York City Administrative Code §§ 8-802 in that they are employees of the NYPD.

157.    The City, as the employer of the covered individual defendant officers, is liable to Plaintiff for the wrongdoing of the covered individual defendant officers.

158.    The acts of the defendant officers constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

159.    The acts of the defendant officers caused the deceased to be deprived of his rights.

160.    The defendant officers, while in uniform, unlawfully seized or allowed for the seizure of Mamady Cisse by intentionally and wantonly shooting him or allowing him to be shot, causing his death.

161.    By reason of the acts and omissions described herein, Plaintiff has sustained damages and was otherwise injured.

**COUNT XIII**
**Violation of Article I, §§ 6 and 12 of the New York State Constitution**
(*Against the Individual Defendants*)

162.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

163.    Nunez and Viveros, jointly and severally subjected Plaintiff to the foregoing acts and omissions absent due process of the law, thereby depriving Plaintiff of the rights, privileges, and immunities guaranteed by Article 1, §§ 6 and 12 of the New York State Constitution, including, without limitation, the right to due process and the right to be free from unreasonable searches and seizures.

164.    As a direct and proximate result of defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered physical, economic and emotional injuries, as well as a deprivation of liberty.

165.    At all times relevant herein, defendants Nunez and Viveros were employees of the City and were acting within the scope of their employment.

166.    The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendants Nunez and Viveros, as set forth herein.

### COUNT XIV
### Wrongful Government Interference with Familial Relationships
### (*Against All Defendants*)

167.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

168.    By the actions and omissions described herein, defendants violated 42 U.S.C. § 1983 by depriving Plaintiff and the deceased the right to be free from wrongful government interference with familial relationships, and Plaintiff's right to companionship, society, and support, as secured by the Fourteenth Amendment.

169.    In committing the acts and omissions complaint of herein, defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

170.    These defendants, acting under the pretense and color of law, permitted, tolerated, and were deliberately indifferent to a pattern, policy, or practice that interfered with Plaintiff's Fourteenth Amendment right to be free from wrongful government interference with familial relationships.

171.    By reason of the foregoing, defendants physically and intentionally interfered with the rights, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, the rights guaranteed by the Fourteenth Amendment.

172.    As a result of the foregoing, Plaintiff suffered injury, loss of support, society, and economic loss.

173.    Defendants committed the foregoing acts intentionally, willfully, wantonly, maliciously, and/or with such reckless disregard of consequences as to reveal a conscious indifference to the clear risk of physically interfering with Plaintiff's right to familial association with his son to an extent that shocks the conscience. They are therefore also liable for punitive damages.

## COUNT XV
### Loss of Services
### (*Against All Defendants*)

174.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

175.    Plaintiff, the father of the deceased, sustained the loss of services, society, companionship, support, and love of his eldest child.

176.    The City is the defendant officers' employer, and is therefore responsible for the conduct undertaken in the scope of their employment and discharge of their duties as NYPD police officers.

## PUNITIVE DAMAGES

177.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

178.    The acts of the defendant officers were willful, wanton, malicious, and oppressive, resulting in grave and fatal harm to Mamady Cisse, as discussed herein. Such acts shock the conscience and therefore warrant an award of punitive damages.

## PRAYER FOR RELIEF

179.    **WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and severally:

a.    Compensatory damages in an amount deemed fair and appropriate by a jury or this Honorable Court;

b.    Punitive damages against the individual defendants;

c.    An award of the costs and expenses of this action, including attorney's fees to Plaintiff pursuant to 42 U.S.C. § 1988;

d.    Interest; and

e.    Any such other and further relief as this Court may deem just and appropriate.

Dated:  New York, New York
        October 31, 2024

Respectfully submitted,

SHULMAN & HILL, PLLC

By: _____

OMAR T. RUSSO
*Attorneys for Plaintiff*
1 State Street Plaza, 15th Floor
New York, New York 10004